UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

COREY S. RIBOTSKY,

Debtor-Appellant,

-against-

SECURITIES AND EXCHANGE COMMISSION,

Creditor-Appellee.

-------------------------------------------------------------------------X

For Online Publication Only

FILED
CLERK

3/23/2026 10:23 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**
25-cv-00349 (JMA)

**APPEARANCES:**

Ronald David Weiss
**Law Office of Ronald D. Weiss, P.C.**
445 Broadhollow Road
Suite CL-10
Melville, NY 11747
*Attorney for Debtor-Appellant*

Neal Jacobson
Patricia Schrage
**Securities and Exchange Commission**
100 Pearl Street, Suite 20-100
New York, NY 10004
*Attorneys for Creditor-Appellee*

**AZRACK, United States District Judge:**

Appellant Corey Ribotsky is the debtor in this Chapter 7 bankruptcy case. Ribotsky appeals from a January 6, 2025 Decision and Memorandum Opinion and a January 10, 2025 Order of Judge Alan S. Trust of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") granting summary judgment in favor of Appellee Securities and Exchange Commission (the "SEC") and declaring that Ribotsky's debt to the SEC is nondischargeable pursuant to 11 U.S.C. § 523(a)(19). For the reasons set forth below, the Bankruptcy Court's judgment is AFFIRMED.

1

## I.   BACKGROUND

### A. <u>SEC Consent Judgment</u>

On August 17, 2012, the SEC filed an Amended Complaint against Ribotsky alleging violations of federal securities laws. (ROA 314–70 ("Am. Compl.").[1]) Specifically, the Amended Complaint alleged that Ribotsky violated:

(1) 15 U.S.C. § 77q(a) ("Section 17(a)" of the Securities Act of 1933);

(2) 15 U.S.C. § 78j(b) ("Section 10(b)" of the Securities Exchange Act of 1934) and the related rule 17 C.F.R. § 240.10b-5 ("Rule 10b-5");

(3) 15 U.S.C. §§ 80b-6(1) and 80b-6(2) ("Sections 206(1) and 206(2)" of the Investment Advisers Act of 1940);

(4) 15 U.S.C. § 80b-6(4) ("Section 206(4)" of the Investment Advisers Act of 1940) and the related rule 17 C.F.R. § 275.206(4)-8 ("Rule 206(4)-8").

(Am. Compl. at ROA 363–66.)

The SEC action settled on August 21, 2013, when Ribotsky signed a Consent Order agreeing to the terms of a judgment against him. (ROA 371–77 ("Consent Ord.").)  Those terms were finalized when the district court entered a Consent Judgment on November 13, 2013. (ROA 378–84 ("Consent Judg.").)

The Consent Judgment restrained Ribotsky from violating various federal securities laws and ordered that Ribotsky "is liable for disgorgement of $12,500,000, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $1,000,000, and a civil penalty in the amount of $1,000,000," as well as post-judgment interest. (Consent Judg. at ROA 381.)  The Consent Judgment provided that Ribotsky agreed to its terms "[w]ithout admitting or denying the allegations of the complaint." (Consent Judg. at ROA 378).  Ribotsky also consented to comply with 17 C.F.R. § 202.5 by agreeing "not

---

[1] "ROA" refers to the Record on Appeal, filed on the docket as ECF No. 7 and attachments thereto.

2

to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis[.]" (Consent Ord. at ROA 375–76.)

## B. **Bankruptcy Court Proceedings**

On February 17, 2023, Ribotsky filed the instant petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). (ROA 9–15.) On February 28, 2023, Ribotsky filed a motion to extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3)(B). (ROA 70–73.) The SEC opposed this motion, (ROA 74–79), and the Bankruptcy Court decided to treat the motion as if Ribotsky had commenced an adversary proceeding pursuant to Bankruptcy Rules 7001(6) and 7003 on the issue of dischargeability pursuant to 11 U.S.C. § 523(a)(19), (ROA 2; see also ROA 582 (earlier Bankruptcy Court opinion explaining procedural history)). On December 21, 2023, the Bankruptcy Court granted partial summary judgment in favor of the SEC, holding that the Consent Judgment's $1,000,000 penalty and any accompanying prejudgment interest is nondischargeable under 11 U.S.C. § 523(a)(7), but denied summary judgment as to the dischargeability of the $12,500,000 disgorgement liability and attendant prejudgment interest under § 523(a)(19). (ROA 580–86.) Subsequently, the Bankruptcy Court permitted Ribotsky and the SEC each to submit evidence and to cross-move for summary judgment regarding the dischargeability of the $12,500,000 and accompanying interest.

On January 6, 2025, the Bankruptcy Court issued its Decision and Memorandum Opinion—described further infra—denying Ribotsky's motion for summary judgment and granting the SEC's second motion for summary judgment in full. (ROA 1983–93 ("Op.").) On January 10, 2025, the Bankruptcy Court issued its accompanying Order and Judgment, holding:

> [T]he entire amount of Corey S. Ribotsky's debt to the SEC ordered in the Consent Judgment including a civil money penalty in the amount of $1,000,000 (one million dollars); disgorgement in the amount of $12,500,000 (twelve million five hundred thousand dollars); prejudgment interest in the amount of $1,000,000 (one million

dollars); and any applicable post-judgment interest, is not dischargeable pursuant to Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

(ROA 1994–95 ("Order").)

**C. Issues on Appeal**

On January 21, 2025, Ribotsky filed a notice of appeal from the Bankruptcy Court's January 6, 2025 Opinion and January 10, 2025 Order. (ECF No. 1.)

As an initial matter, Ribotsky presents several meritless issues on appeal, namely:

(1) Whether the Bankruptcy Court erred by giving undue deference to the SEC in contravention of the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024);

(2) Whether the Bankruptcy Court failed to recognize that the Consent Judgment was discharged as a matter of law when the SEC failed to object to its discharge during Ribotsky's 2014 Chapter 7 bankruptcy proceeding; and

(3) Whether the Bankruptcy Court erred in determining that the Consent Judgment's $1,000,000 penalty is nondischargeable under 11 U.S.C. § 523(a)(7), even though the penalty amount did not conform to the SEC's fine schedule.

(See ECF No. 4 ¶¶ 8–10.) The Court disposes of these issues quickly in Part III.A, infra. [2]

The sole remaining issue on appeal is whether the Bankruptcy Court correctly concluded that there is no genuine issue of material fact as to whether Ribotsky's debt pursuant to the Consent Judgment was "for the violation of any of the Federal securities laws" and therefore nondischargeable under 11 U.S.C. § 523(a)(19). (See ECF No. 4 ¶¶ 1–6; Op. at ROA 1993.)

## II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to

---

[2] Ribotsky's "Statement of Issues to Be Presented" attempts to raise the issue of whether the Bankruptcy Court erred by referencing the existence of a criminal trial against Ribotsky, when there was no such criminal trial. (See ECF No. 4.) But Ribotsky presents no argument on this issue in his brief. Indeed, the section of his brief that, per its section header, purports to address this "issue" in fact contains irrelevant argumentation on an entirely separate issue, namely, the credibility of Dworkin as a witness. (See ECF No. 6 at 47–49.) Moreover, nothing in the Bankruptcy Court's Opinion or Order suggests that the existence or nonexistence of criminal proceedings against Ribotsky had any impact whatsoever on the Bankruptcy Court's decision. (See Op. at ROA 1983–95.)

4

hear appeals . . . from final judgments, orders, and decrees . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. §§ 158(a)(1), (3). A district court reviews a bankruptcy court's factual findings for clear error and its conclusions of law de novo. See In re Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012); Wenegieme v. Macco, No. 17-cv-1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018).

Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056, states that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. "A bankruptcy court's decision to grant summary judgment based upon undisputed facts is reviewed de novo." Townsend v. Ganci, 566 B.R. 129, 133 (E.D.N.Y. 2017), aff'd sub nom., In re Townsend, 726 F. App'x 91 (2d Cir. 2018).

### III.    DISCUSSION

#### A. <u>Preliminary Issues</u>

At the outset, the Court finds it prudent to summarily dispose of the meritless issues raised by Ribotsky in his "Statement of Issues to Be Presented on Appeal." (See ECF No. 4.)

First, Loper Bright has no relevance to this appeal, as this is not an Administrative Procedure Act action and the Bankruptcy Court did not defer to the SEC's interpretation of any statute that the agency enforces. See generally 603 U.S. 369.

Second, Ribotsky failed to preserve his argument that the SEC should have objected to the discharge of the Consent Judgment during his 2014 bankruptcy proceedings because he never raised this issue before the Bankruptcy Court. (See ROA 1924–24; ECF No. 6 at 46–49.) Accordingly, the Court declines to consider Ribotsky's poorly briefed argument on this topic. See, e.g., In re DPH Holdings Corp., 468 B.R. 603, 619 (S.D.N.Y. 2012) ("To preserve an issue for

5

appellate review by the district court, the issue must be raised sufficiently below such that the bankruptcy court can rule on the issue.") (internal citations omitted).

Third, Ribotsky's challenge to the Bankruptcy Court's prior holding that the $1,000,000 penalty is nondischargeable under § 523(a)(7) fails for several reasons. Ribotsky argues that the penalty is dischargeable because the penalty amount was assessed improperly. (See ECF No. 6 at 49–50.) However, Ribotsky conceded the penalty amount by signing the Consent Judgment. Thus, any claim based on the penalty's non-conformance with the SEC's fine schedule is barred by res judicata. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). Additionally, this Court agrees with the merits of the Bankruptcy Court's decision that the penalty is nondischargeable under § 523(a)(7). (See ROA 580–86.) Finally, the Bankruptcy Court has now held that the penalty portion of the Consent Judgment is also nondischargeable pursuant to § 523(a)(19) and, as discussed below, this Court agrees.

**B. <u>Nondischargeability Under Bankruptcy Code Section 523(a)(19)</u>**

A debt will be nondischargeable in bankruptcy if it meets one of the statutory exceptions to discharge under Section 523 of the Bankruptcy Code. See 11 U.S.C. § 523(a). As relevant, § 523(a)(19) provides a debtor is not entitled to a discharge in bankruptcy for any debt that:

> (A) is for . . . (i) the violation of any of the Federal securities laws  . . . , and

> (B) results, before, on, or after the date on which the petition was filed, from . . . (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding[, or] (ii) any settlement agreement entered into by the debtor[.]

11 U.S.C. § 523(a)(19). Both subsections (A) and (B) must be satisfied for a debt to be nondischargeable. See, e.g., In re Fusco, 641 B.R. 438, 455 (E.D.N.Y. 2022). "[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." Grogan v. Garner, 498 U.S. 279, 291 (1991).

Here, the only question is whether there is no genuine issue of material fact as to whether Ribotsky's debt under the Consent Judgment is a debt "for the violation of any of the Federal securities laws" within the scope of subsection (A).  The parties do not dispute that Ribotsky's debt results from a consent order within the scope of subsection (B).

As explained below, this Court agrees with the Bankruptcy Court that the Consent Judgment is "for the violation of . . . the Federal securities laws" and that the SEC is entitled to summary judgment.

### C.  <u>The Bankruptcy Court's Decision</u>

The Bankruptcy Court found that the record contained the following "undisputed evidence" of Ribotsky's "multiple violations of federal securities law."  (Op. at ROA 1989.)

Ribotsky's deposition transcript established that Ribotsky "was a principal of the N.I.R. Group," (id.; see also ROA 758); that he "served as an investment adviser to AJW Qualified," (Op. at ROA 1989; ROA 758); and that he used client funds to pay his personal expenses, including a car lease, (Op. at ROA 1989; see also ROA 771, 776).  The Bankruptcy Court concluded that this evidence established that Ribotsky misappropriated client funds in violation of Sections 206(1) and 206(2) of the Advisers Act, which make it unlawful for an investment advisor "to employ any device, scheme, or artifice to defraud any client or prospective client" or "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client[.]"  (Op. at ROA 1989–90); see also 15 U.S.C. § 80b-6(1), (2).

Ribotsky's deposition transcript also established that Ribotsky combined two funds, in part so that he could use one fund's assets to pay the other's outstanding redemption requests.  (Op. at ROA 1990; see also ROA 872–73.)  However, Ribotsky did not disclose this reason for combining the funds to his investors.  (Op. at ROA 1990; see also ROA 870.)  A declaration from Jesse Gottlieb and the deposition of Russell Olson, who both invested with Ribotsky, showed that

Ribotksy's investors "would have found the redemptions and feeder structure material to their investments[.]"  (Op. at ROA 1991; see also ROA 1062–63, 975–76.)  The Bankruptcy Court concluded that this evidence established that Ribotsky violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by making materially false statements or omissions in connection with the purchase or sale of securities.  (Op. at ROA 1990–91); see also 15 U.S.C. § 78(j); 17 C.F.R. § 240.10b-5.

Olson's deposition transcript established that, in October 2008, Ribotsky informed Olson that his firm's proceeds were between $5 million and $15 million per month, which Olson found "encouraging" considering the then-ongoing financial crisis.  (Op. at ROA 1991; see also ROA 985.)   However, a declaration from Christopher Mele, an SEC accountant, established that the firm's actual proceeds during that time were around $913,000 per month.  (Op. at ROA 1992; see also ROA 1065.)  The Bankruptcy Court concluded that Ribotsky's statement violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder because it was a materially false statement by an investment advisor to an investor or prospective investor in a pooled investment vehicle.  (Op. at ROA 1991–92); see also 15 U.S.C. § 80b-6(4); 17 C.F.R. § 275.206(4)-8.

Olson's deposition transcript further established that, in December 2008, Ribotsky informed Olson that there were "[n]o defaults or bankruptcies" within Ribotsky's portfolio.  (Op. at ROA 1992; see also ROA 988.)  However, a declaration from Daryl Dworkin, a former senior analyst at NIR and Ribotsky's former co-defendant in the underlying SEC action, established that there were, in fact, an increasing number of defaults in the portfolio between 2006 and 2008.  (Op. at ROA 1992; see also ROA 988.)  The Bankruptcy Court concluded that Ribotsky's statement to Olson violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder; Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and Section 17(a) of the Securities Act,  which prohibits "obtaining money or property through the making of materially false statements or

8

omissions in connection with the offer or sale of securities, or engaging in any transaction, practice or course of business which operates as a fraud upon a purchaser." (Op. at ROA 1992); see also 15 U.S.C. § 80b-6(4); 17 C.F.R. § 275.206(4)-8; 15 U.S.C. § 78(j); 17 C.F.R. § 240.10b-5; 15 U.S.C. § 77(q).

Ribotsky's deposition transcript established that, in October 2008, Ribotsky told an NIR investor that the sole reason for NIR's delay in providing a late annual report was NIR's "switch to the master/feeder structure" and "new auditing standards for all funds[.]" (Op. at ROA 1992; see also ROA 867.) However, Dworkin's declaration established that the true reason for the delay was that NIR's auditor believed that Ribotsky's valuations of NIR's funds were not supportable. (Op. at ROA 1993; see also ROA 1037–38.) The Bankruptcy Court concluded that Ribotsky's misrepresentation violated Section 10(b) of the Exchange Act, Section 17(a) of the Securities Act, and Sections 206(1) and 206(2) of the Advisers Act. (Op. at ROA 1992–93); see also 15 U.S.C. § 78(j); 15 U.S.C. § 77(q); 15 U.S.C. § 80b-6.

Ultimately, the Bankruptcy Court concluded that the points above supported its determination that the SEC was entitled to summary judgment regarding the nondischargeability of the Consent Judgment pursuant to 11 U.S.C. § 523(a)(19). The Bankruptcy Court reasoned that the record contained "evidence of multiple securities law violations, each of which was alleged in the Amended Complaint and each of which was a foundation for the Consent Judgment." (Op. at ROA 1993.)

## D. **Analysis**

This Court determines that there is no genuine dispute of material fact as to whether the Consent Judgment is nondischargeable under 11 U.S.C. § 523(a)(19) and concludes that the SEC is entitled to summary judgment.

9

### 1.  There is No Genuine Dispute of Material Fact

Ribotsky's argument that he meaningfully disputed the evidence relied upon by the Bankruptcy Court is meritless.  As an initial matter, as the Consent Judgment prohibits Ribotsky from making "any public statement denying . . . any allegation in the Complaint or creating the impression that the Complaint is without factual basis[.]"  (Consent Judg. at ROA 375–76.)  For the most part, Ribotsky's Rule 7056 statement, summary judgment briefs, and appellate briefs attack the credibility of the evidence presented by the SEC. [3]  (See ROA at 1895–1923 ("Ribotsky 7056 Stmt."); ROA 1924–37 ("Ribotsky MSJ Br."); ROA 1972–82 ("Ribotsky MSJ Reply"); ECF No. 6; ECF No. 12.)  For example, Ribotsky argues that the Bankruptcy Court was wrong to credit Dworkin's declaration because Dworkin pleaded guilty to securities fraud violations and signed a cooperation agreement with the SEC.  (See, e.g., Ribotsky 7056 Stmt. at ROA 1901–07;  Ribotsky MSJ Br. at ROA 1935–36; ECF No. 6 at 18–19; ECF No. 12 at 13–14.)  He also argues that the Bankruptcy Court erred in crediting Olson's deposition testimony and Gottlieb's declaration because their statements are "anecdotal" and "outdated" and therefore "inaccurate, unreliable and inadmissible[.]"  (ECF No. 6 at 42, 23–24; ECF No. 12 at 15.)  The Bankruptcy Court considered and rejected similar arguments, (see, e.g., Ribotsky 7056 Stmt. at ROA 1906–09), explaining that "[b]road, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact."  (Op. at ROA 1988 (quoting Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005)); see also, e.g., Progressive Cas. Ins. Co. v. Monaco, No. 16-cv-823, 2017 WL 2873051, at *9 (D. Conn. July 5, 2017) (concluding that

---

[3] The Court notes that Ribotsky's "Objection to the Second Motion for Summary Judgment by the Securities and Exchange Commission" purports to dispute some of the factual statements included in the SEC's Rule 7056 Statement. (See ROA 1972–82.)  That filing consists predominantly of rhetorical questions and impassioned conclusory denials; it does not cite to a single piece of evidence, admissible or otherwise.  (See id.)  This Court agrees with the Bankruptcy Court that "a party may not simply deny alleged material facts by a conclusory statement, or without citation to admissible evidence."  (Op. at ROA 1983–84 n.1.)  Accordingly, no part of this filing presents a genuine dispute of material fact.

impeachment evidence concerning witness's past conviction did not create a genuine issue of material fact absent evidence contradicting the substance of his testimony).  This Court concludes that the Bankruptcy Court properly rejected these arguments, which do not raise any genuine question of material fact.

Ribotsky also argues that the Bankruptcy Court erred by disregarding the 2010 declaration of Marcum LLP, a financial auditing firm, which Ribotsky submitted as an attachment to his own affidavit during the discovery process and which he claims demonstrates his innocence.  (ECF No. 6 at 12–13, 26; see also ROA 1237–52 (Marcum Declaration); id. at ROA at 1252 ("Had Marcum ever discovered that NIR, Mr. Ribotsky, or anyone affiliated with NIR, had engaged in financial statement wrongdoing, Marcum would have taken appropriate action[.]").)  Although the Marcum Declaration was produced to the Bankruptcy Court during discovery, it is not referenced anywhere in Ribotsky's Rule 7056 statement or summary judgment briefing.  (See Ribotsky 7056 Stmt. at ROA 1895–1923; Ribotsky MSJ Br. at ROA 1924–37; Ribotsky MSJ Reply at ROA 1972–82.)  Accordingly, the Bankruptcy Court did not err in disregarding the Marcum Declaration, and this Court declines to consider it for the first time on appeal.  See, e.g., In re Mosdos Chofetz Chaim Inc., No. 22-33, 2023 WL 105715, at *2 (2d Cir. Jan. 5, 2023) ("[A] party to a bankruptcy action waives an argument by failing to raise it in the bankruptcy court, even if they subsequently raise the argument in the district court on appeal.") (citing In re Johns-Manville Corp., 759 F.3d 206, 219 (2d Cir. 2014)).

## 2. The SEC Established that the Consent Judgment is for the Violation of Federal Securities Laws

Having reviewed the facts and the law, this Court agrees with the Bankruptcy Court that the undisputed facts in the record establish that the Consent Judgment was "for the violation of the Federal securities laws."  11 U.S.C. § 523(a)(19) (cleaned up).

Supreme Court precedent instructs that the Bankruptcy Court should inquire into the "true nature of the debt" arising out of a no-fault consent judgment or settlement to determine whether the debt is exempt from discharge under Section 523(a). Archer v. Warner, 538 U.S. 314, 321 (2003); see also id. (concluding that Congress intended Bankruptcy Courts to conduct "the fullest possible inquiry" to determine whether a debt arises out of fraud within the scope of § 523(a)(2)(A)) (quoting Brown v. Felsen, 442 U.S. 127, 138 (1979)); Grogan, 498 U.S. at 290 (assuming that the fraud exceptions in the Bankruptcy Code are broad, and that they "permit exception from discharge of all fraud claims creditors have successfully reduced to judgment"). As in Archer and Brown, the fact that the Consent Judgment in this case did not include an admission of liability does not preclude the Bankruptcy Court from finding—based on its own review of relevant evidence—that the judgment in this case arose out of violations of federal securities laws. See Archer, 538 U.S. at 321; Brown, 442 U.S. at 138.

The only violations alleged against Ribotsky in the Amended Complaint are violations of federal securities laws. (See Am. Compl. at ROA 363–66.) Although the Consent Judgment does not include any finding of Ribotsky's liability for securities violations, it states that he is "liable for disgorgement of $12,500,000, representing profits gained as a result of the conduct alleged in the Complaint[.]" (Consent Judg. at ROA 381.) Moreover, the evidence presented to the Bankruptcy Court and reviewed by this Court independently shows that Ribotsky in fact engaged in conduct alleged in the Amended Complaint—namely, that he misappropriated client funds, omitted material facts from communications with his investors, and misrepresented his firm's proceeds and defaults. (See, e.g., ROA 867, 870, 872–73, 975–76, 985, 988, 1037–38, 1062–63, 1065; Am. Compl. at ROA 314–70.)

Ribotsky contests that the evidence supports the Bankruptcy Court's legal conclusion that he violated federal securities laws, but his arguments are meritless. First, he argues that the car

12

payment he made was not a misappropriation of client funds in violation of Section 206 of the Advisers Act because it was "a contractual employment obligation to compensate Mr. Ribotsky for his services." (ECF No. 6 at 15, 28, 33–37.)  Ribotsky appears to argue that this creates a triable issue of fact as to whether he possessed the intent to deceive or defraud required for a violation of Section 206.  (See id. at 33–37.)  However, Ribotsky never raised this argument before the Bankruptcy Court; his summary judgment briefing mentions neither the car payment nor the scienter element of Section 206.  (See Ribotsky 7056 Stmt. at ROA 1895–1923; Ribotsky MSJ Br. at ROA 1924–37; Ribotsky MSJ Reply at ROA 1972–82.)  Accordingly, this Court declines to consider this argument for the first time on appeal.  See In re Mosdos Chofetz Chaim Inc., 2023 WL 105715, at *2.  In any event, Section 206 may be violated by misappropriating client funds for business purposes just as much as personal ones.  See 15 U.S.C. § 80b-6; Sec. & Exch. Comm'n v. Penn, 225 F. Supp. 3d 225, 237 (S.D.N.Y. 2016) (holding that an investment advisor violated Section 206 by diverting client funds to pay business expenses).

Second, Ribotsky argues that the witnesses who testified about his misrepresentations regarding his reasons for combining two funds were "benefited, rather than harmed by such combinations" and that their testimony therefore does not support the Bankruptcy Court's conclusion that Ribotsky's misrepresentations were material misrepresentations within the scope of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  (ECF No. 6 at 14–15, 38–43.)  Ribotsky cites no law in support of this argument, which is patently meritless.  "[U]nlike a private plaintiff, the SEC need not allege or prove reliance, causation, or damages in an action under Section 10(b) or Rule 10b–5."  S.E.C. v. Kelly, 765 F. Supp. 2d 301, 319 (S.D.N.Y. 2011); see also S.E.C. v. CKB168 Holdings, Ltd., 210 F. Supp. 3d 421, 441 (E.D.N.Y. 2016) (similar); 5 U.S.C. § 78(j); 17 C.F.R. § 240.10b-5.

Finally, Ribotsky presents no argument contesting the Bankruptcy Court's additional conclusions that he:

(a) violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder, by misrepresenting his firm's proceeds and defaults, (see Op. at ROA 1991–92);

(b) violated Section 17(a) of the Securities Act, as well as Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, by misrepresenting the firm's defaults, (see Op. at ROA 1992); and

(c) violated Section 10(b) of the Exchange Act, Section 17(a) of the Securities Act, and Section 206 of the Advisers Act, by misrepresenting the reason NIR's 2007 audit was delayed, (see Op. at ROA 1992–93).

(See ECF No. 6; ECF No. 12.)

Accordingly, this Court agrees with the Bankruptcy Court that the SEC is entitled to summary judgment. [4]  The record here, which raised no disputed issues of material fact, established that the Consent Judgment is "for the violation of the Federal securities laws."  Therefore, the debt incurred therein is nondischargeable under 11 U.S.C. § 523(a)(19).

## IV.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court's January 6, 2025 Opinion and January 10, 2025 Order are hereby AFFIRMED.

**SO ORDERED.**

Dated:   March 23, 2026
            Central Islip, New York

/s/ JMA
_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

---

[4] To the extent that Ribotsky takes issue with the fact that the Bankruptcy Court refused to hold an evidentiary hearing before ruling on the motions for summary judgment, (see ECF No. 6 at 15–16), the Bankruptcy Court did not abuse its discretion.  Cf., e.g., In re Ditech Holding Corp., No. 25-cv-2064, 2025 WL 3168074, at *8 (S.D.N.Y. Nov. 11, 2025) (concluding that the bankruptcy court did not abuse its discretion in disallowing debtor's claim without an evidentiary hearing because "the issues it decided could be decided based on the evidence on the record and there were no disputed issues of material fact").  Because there were no disputed issues of material of fact, an evidentiary hearing was unnecessary.  The fact that the Bankruptcy Court originally scheduled a hearing that it subsequently cancelled is irrelevant.